CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUN 17 2005

JOHN F. CORCORAN, CLERK
BY
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| JAMES A. LUCKER, | ) | Civil Action No. 7:05CV00126 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| COLE VISION CORP., d.b.a. SEARS | ) | |
| OPTICAL, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TERRI HILL BANEZ, | ) | |
| | ) | By: James C. Turk |
| Defendant. | ) | Senior United States District Judge |

The Plaintiff, James A. Lucker, ("Lucker" or "plaintiff"), through counsel, filed a Motion

for Judgment in the Circuit Court for the City of Roanoke against Cole Vision Corp. ("Cole

Vision") and Terri Hill Banez ("Banez"), a regional manager for Cole Vision. Plaintiff alleged

that Cole Vision wrongfully terminated plaintiff on December 19, 2003. On March 3, 2005,

defendant removed the case to this Court alleging that the parties are diverse and the amount in

controversy exceeds $75,000. The case is before the Court on Plaintiff's March 10, 2003 Motion

to Remand. Upon review of the pleadings, and after oral arguments, the Court finds that

plaintiff's motion to remand should be denied.

I.

In his Motion for Judgment, plaintiff alleges that, on September 17, 1990, Cole Vision

hired plaintiff as an optician. Cole Vision terminated plaintiff's employment on December 18,

2003. At that time, plaintiff was the manager of Sears Optical at Valley View Mall in Roanoke,

1

Virginia. Plaintiff alleges that in 2003, Cole Vision began an "illegal, fraudulent and deceptive practice of falsely advertising a fifty percent discount on a pair of eyeglasses with no intent to sell a pair of eyeglass at such a discount." Plaintiff's Motion for Judgment, ¶ 6. Instead, Cole Vision charged customers twenty-five dollars for a two year warranty and ten dollars for a lens care kit, in addition to the glasses at a fifty percent discount. Cole Vision did not give its customers the opportunity to refuse the extra charges.

Plaintiff alleges that the Board for Opticians may revoke any license it issued to an optician if there are published advertisements that are false, misleading or deceptive, such as the advertisement published by Cole Vision in this case. After coming to the conclusion that Cole Vision's advertisement was false, misleading and deceptive, plaintiff consulted with legal counsel to determine if his conclusions about the illegal nature of the advertisements were accurate. Plaintiff alleges that his counsel advised him that he would be subject to having his optician's license suspended or revoked if he participated knowingly in the illegal activity and could be prosecuted for participating in the fraudulent scheme.

Plaintiff alleges that he immediately contacted defendant Banez and discussed his concerns about the advertisements. Plaintiff was told that he would have to continue presenting a package of lenses, warranty and lens kit to the customers responding to the fifty-percent discount advertisement with no itemization of the total allowed. Instead, plaintiff instructed his staff to itemize the offering and allow the customer a choice in which items in addition to the lenses they wanted. When Banez learned of plaintiff's deviation from Cole Vision's instructions, she instructed all of the employees under plaintiff's supervision to ignore plaintiff's instructions and only offer the consumer a package sale with no choice of itemization.

2

Banez sent plaintiff a "Performance Improvement Plan" and plaintiff was ordered to immediately stop "refusing to package price" and to "coach the staff into package pricing." Plaintiff alleges that he objected to this "Performance Improvement Plan" and informed Banez and Cole Vision in writing that its practices were a violation of state law. Plaintiff alleges that in response to the written complaint, on December 18, 2003, plaintiff was summoned to a meeting with Banez and Cole Vision who then terminated plaintiff from his employment with Cole Vision as optical manager of its Sears Optical Store in Valley View Mall.

Plaintiff alleges that he was forced to choose between remaining as the optical manager of Sears Optical Store and committing a criminal act, subjecting himself to a license suspension, or being terminated. Additionally, plaintiff contends that his termination violated Virginia's public policy as enumerated in VA. CODE ANN. § 59.1-200 and § 54.1-111 and the regulations of the Board for Opticians. As a result, plaintiff brought this wrongful discharge action in the Circuit Court for the City of Roanoke against Cole Vision and Banez.

On November 5, 2004, the defendants removed the case to this Court. The defendants aver that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 in that the parties are diverse and the amount in controversy exceeds $75,000. Cole Vision is incorporated under the laws of the State of Delaware and has its principal place of business in the State of Ohio. Plaintiff is a citizen of the Commonwealth of Virginia. Although Banez is also a citizen of Virginia, Cole Vision contends that her citizenship should be disregarded for purposes of removal since she has been fraudulently joined as a defendant. To that end, Cole Vision argues that in a wrongful discharge case a plaintiff may sue only the person or entity with whom he has an employment relationship. As plaintiff did not have an employment relationship with Banez,

3

plaintiff cannot state a claim against her.

In his motion to remand, plaintiff contends that Banez was not fraudulently joined. Plaintiff argues that since a cause of action for wrongful discharge sounds in tort, Banez, as the tortfeasor in this case, was properly named as a defendant and complete diversity does not exist. Accordingly, plaintiff contends that this Court lacks subject matter jurisdiction and the case must be remanded to the Circuit Court in which it was originally filed.

## II.

The doctrine of fraudulent joinder permits removal when a nondiverse party is named as a defendant. *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). To establish fraudulent joinder, the removing party must demonstrate that the plaintiff cannot establish a cause of action against the instate defendants. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). If the defendant established fraudulent joinder, the Court is permitted to disregard, for jurisdictional purposes, the citizenship of the nondiverse defendant, assume jurisdiction over the case, dismiss the nondiverse defendant and thereby retain jurisdiction. *Mayes*, 198 F.3d at 461.

Virginia adheres to the common-law rule that "when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provision, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate." *Bowman v. State Bank of Keysville*, 229 Va. 534, 535, 331 S.E.2d 797, 798 (1985). A narrow exception exists to this employment-at-will doctrine when an employer's discharge of an employee violates Virginia's public policy. *Id.* at 539-40, 331 S.E.2d at 800-802. Within this exception, the Supreme Court of Virginia has recognized the tort of wrongful or retaliatory discharge. *Id.; Miller v. Sevamp*, 234 Va. 462, 362 S.E.2d 915 (1987).

The Supreme Court of Virginia has not considered, however, the issue of whether a plaintiff can sue a co-employee, even the manager who made the decision to terminate the plaintiff, for wrongful discharge. Although not binding on this Court, North Carolina courts have considered the issue and have held that a plaintiff may make a valid claim for wrongful discharge only against the person or entity with which he has an employment contract. *Sides v. Duke University*, 328 S.E.2d 818, 827 (N.C. App. 1985). The Court finds the North Carolina's reasoning persuasive on this issue.

At the hearing conducted in chambers on this matter, plaintiff argued that North Carolina law should not be considered in deciding this Virginia law issue since the two states' laws are completely different. North Carolina, however, adheres to the same common law doctrine of employment-at-will as Virginia. *See id at* 824; *Bowman*, 229 Va. at 535, 331 S.E.2d at 798. Moreover, both North Carolina and Virginia recognize narrow exceptions to the doctrine when termination of the employment-at-will relationship would violate the respective state's public policy. *Sides*, 328 S.E.2d at 824; *Bowman*, 229 Va. at 535, 331 S.E.2d at 798. Thus, plaintiff's argument, that the two states' laws are too different for the North Carolina cases to be instructive on this matter, is not compelling. Moreover, this Court finds that allowing a plaintiff to sue only his employer comports with Virginia's desire to have exceptions to the employment-at-will doctrine remain narrow. *See id* at 540, 331 S.E.2d at 801; *Rowan v. Tractor Supply Company*, 263 Va. 209, 214, 559 S.E.2d 709, 711 (2002).

Here, "Banez was at all material times the Regional Manager employed by Cole Vision to manage the region that included Roanoke City, Virginia and *in such capacity* had the power to fire employees within her region of management." Motion for Judgment, ¶ 3 (emphasis added).

5

Plaintiff's employment contract was not with Banez, individually. Plaintiff cannot complain that someone who never employed him wrongfully terminated that employment. As plaintiff's employer, Cole Vision is the proper defendant to plaintiff's claim for wrongful discharge. Accordingly, Banez must be dismissed from this action as plaintiff cannot state a claim against her and plaintiff's motion to remand must be denied as all the requirements for diversity jurisdiction are present in this case. An appropriate order shall this day issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTER: This 16th day of June, 2005.

_____
Senior United States District Judge

6