CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 2 6 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| JAMES A. LUCKER, | ) | Civil Action No. 7:05CV00126 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| COLE VISION CORPORATION, | ) | |
| *d.b.a. Sears Optical*, | ) | |
| | ) | By: James C. Turk |
| Defendant. | ) | Senior United States District Judge |

In this action, Plaintiff James A. Lucker claims that Cole Vision Corporation wrongfully terminated him under Virginia common law in violation of public policy expressed in the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200 (2005), and the regulations of the Board for Opticians, see Va. Code Ann. § 54.1-111 (2005). Lucker seeks compensatory and punitive damages in the total amount of $1,100,000. This matter is before the court on Defendant Cole Vision's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); a hearing was held on this motion on September 14, 2005. The court finds that Lucker fails to show wrongful termination under the legal authority he relies upon to support his claim. Therefore, the court will grant Cole Vision's Motion to Dismiss without prejudice.

## I.

Lucker alleges the following facts.[1] Cole Vision owns and operates an optical retail store

---

[1] Lucker originally filed a Motion for Judgment in the Circuit Court for the City of Roanoke against Cole Vision and Terri Hill Banez, a regional manager for Cole Vision. On March 3, 2005, Cole Vision removed the action to this court and motioned to dismiss Banez as a defendant on grounds of fraudulent joinder. See Def.'s Notice of Removal. On March 10, 2005, Lucker filed a Motion to Remand this action back to state court. After review of the pleadings and oral arguments, by Memorandum Opinion and Order of June 17, 2005 the court denied Lucker's Motion to Remand and dismissed Banez as a defendant.
Cole Vision is incorporated under the laws of Delaware and its principal place of business

at Valley View Mall in Roanoke, Virginia, and trades as Sears Optical. Lucker is a licensed optician subject to Virginia regulations governing the Board for Opticians. Lucker worked at Cole Vision from September 1990 until he was fired in December 2003. Lucker was the manager of the Sears Optical store in Valley View Mall when he was fired.

The Regional Manager of Cole Vision, Terri Hill Banez, wrongfully terminated Lucker because he refused to participate in, and instructed his staff not to participate in a "misleading" "fraudulent and deceptive" "advertising scheme" on behalf of Cole Vision. Pl.'s Mot. J., 2. Specifically, Lucker contends that in 2003, Cole Vision began an "illegal, fraudulent and deceptive practice of falsely advertising a fifty-percent discount on a pair of eyeglasses with no intent to sell a pair of eyeglasses at such a discount." Id. Instead, Cole Vision charged customers twenty-five dollars for a two-year warranty and ten dollars for a lens care kit. Cole Vision did not give its customers the opportunity to refuse the extra charges. Lucker states that he became aware of the advertisement after its publication.

Lucker avers that the Board for Opticians may suspend or revoke any license issued to an optician if there are published advertisements that are false, misleading, or deceptive. After coming to the conclusion that Cole Vision's advertisement was false, misleading, and deceptive, Lucker consulted with legal counsel to determine if his conclusions about the illegal nature of the advertisement were accurate. Lucker's counsel advised him that his optician's license could be suspended or revoked by the Board, and he could be prosecuted for participating in the fraudulent scheme.

---

is in Ohio. Lucker is a citizen of Virginia.

Lucker immediately contacted Banez and discussed his concerns about the illegal advertisement. After Banez consulted with other principals in Cole Vision, she told Lucker that he would have to continue to present a package of lenses, a warranty, and a lens kit without itemization of the total price to customers who responded to the advertisement. Instead, Lucker instructed his staff to itemize the offering and allow customers a choice as to which items they wanted, if any, in addition to the lenses. Cole Vision then wrongfully terminated Lucker on December 18, 2003 in retaliation for his refusal to adhere to Cole Vision's directions concerning sales of its products to customers who responded to the advertisement.

Thus, Lucker claims that he was essentially forced to choose between remaining the manager at Sears Optical and committing a criminal act, thereby risking revocation or suspension of his license and prosecution, or being terminated. Lucker claims that his termination violated Virginia's public policy expressed in the Virginia Consumer Protection Act and the regulations of the Board for Opticians, VA. CODE ANN. §§ 59.1-200, 54.1-111. As a result of his termination, Lucker suffered severe financial losses, humiliation, and emotional harm, and will continue to suffer such damages in the future. Lucker alleges that it is impossible for him to find employment as an optician in the Roanoke area because Cole Vision has a monopoly on the sale of lenses, and he has only found employment as a bus driver.

Cole Vision denies Lucker's claims, and responds that he was fired for legitimate reasons. In short, Cole Vision responds that Lucker was fired because he was insubordinate and his job performance fell below an acceptable level. Cole Vision argues that Lucker fails to state a claim upon which relief may be granted under Rule 12(b)(6) because the facts he alleges in reference to law he cites does not support his wrongful termination claim.

## II.

The standard of review in this case is Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) should not be granted unless it is clear as a matter of law that after accepting the facts alleged in the complaint to be true and construing the allegations in the light most favorable to the plaintiff, the court could not grant relief under any set of facts that the plaintiff could prove consistent with his allegations. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Revene v. Charles County Comm'rs. 882 F.2d 870, 872 (4th Cir. 1989). Additionally, because this case is before the court on diversity jurisdiction, the substantive law of the forum state, Virginia, applies. See Erie R.R. Co. V. Tompkins, 304 U.S. 64 (1938); see also, Kline v. Wheels by Kinney, Inc., 464 F.2d 184, 187 (4th Cir. 1972) (stating that a federal court must determine the rule which the state Supreme Court would apply when an area of state law is unclear). Construing the facts and allegations presented by Lucker in his favor, the court cannot grant him relief as a matter of law under the legal authority he relies upon to support his wrongful termination claim.

## III.

Under Virginia common law, an employer may ordinarily terminate an employee at-will after reasonable notice without cause when no definite term of employment is determinable from the employment contract. E.g., Stonega Coal & Coke Co. v. Louisville & N. R. Co., 55 S.E. 551, 552 (Va. 1906) (holding that an employment contract for the rendition of services from which an intended duration cannot be determined may be terminated at-will by either party upon reasonable notice); Miller v. SEVAMP, Inc., 362 S.E.2d 915, 917 (Va. 1987) (affirming state circuit court decision that no cause of action for retaliatory discharge exists in employment-at-will situation where appellant employee was discharged because she was a witness for co-worker

4

at a grievance hearing). This principle is firmly established law and is recognized as the "employment-at-will" doctrine. See id. However, this doctrine is not absolute. City of Virginia Beach v. Harris, 523 S.E.2d 239, 245 (Va. 2000) (stating that violation of the public policy underlying a statute does not automatically give rise to a viable wrongful discharge claim). In Bowman v. State Bank of Keysville, the Supreme Court of Virginia held that there is a narrow public policy exception to the employment-at-will doctrine. 331 S.E.2d 797, 801 (Va. 1985) (reversing in part, holding that a narrow exception to the employment-at-will rule exists for retaliatory discharge that violates public policy implicit in state statute where plaintiff employees/stockholders were threatened with discharge and then fired by board of directors for attempting to vote against merger); Lockhart v. Commw. Educ. Sys. Corp., 439 S.E.2d 328, 330-31 (Va. 1994) (reversing where plaintiffs alleged wrongful termination based on racial and gender discrimination, and finding claims cognizable under Bowman exception based on public policy to be free from such discrimination explicitly expressed in Virginia Human Rights Act) (abrogated by statute, see Va. Code Ann. § 2.1-725(D)). Under this exception, a plaintiff must show that "an employer violated a [public] policy enabling the exercise of an employee's statutorily created right." Storey v. Patient First Corp., et al., 207 F. Supp. 2d 431, 451 (E.D. Va. 2002) (citing, Rowan v. Tractor Supply Co., 559 S.E.2d 709, 710-11 (Va. 2002)). This exception does not apply where an employer's discharge of an employee violates "only private rights or interests." Storey, 207 F. Supp. 2d at 450 (citing, SEVAMP, 362 S.E.2d at 918). Thus, in order for a wrongful termination claim based on retaliation to fall within the exception under Bowman, first, "a plaintiff [ ] must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff[,]" Storey, 207 F. Supp. 2d at 450; and second, the underlying policy of

5

that statute must be "to protect the property rights, personal freedoms, health, safety, or welfare of the people in general[,]" SEVAMP, 362 S.E.2d at 918. See also, Bowman, 331 S.E.2d at 801.

Because all Virginia statutes generally express some degree of public policy, the Supreme Court of Virginia further restricted the Bowman exception as articulated in the decisions of City of Virginia Beach v. Harris, 523 S.E.2d 239 (Va. 2000), and Mitchem v. Counts, 523 S.E.2d 246 (Va. 2000). See Anderson v. ITT Industries, Corp., 92 F. Supp. 2d 516, 520-22 (E.D. Va. 2000) (discussing state court's narrowing of Bowman exception by Supreme Court of Virginia in Harris and Mitchem decisions, and denying defendant's motion to dismiss where plaintiff was terminated for refusing to forge documents and was within group of persons statute sought to protect) (citing, Harris, 523 S.E.2d 239 at 246; Mitchem, 523 S.E.2d at 252). In Harris and Mitchem the plaintiffs used a criminal statute as the basis of a Bowman claim. See Harris, 523 S.E.2d 239 at 246 (holding that plaintiff police officer may not use criminal statute to protect himself when public policy underlying statute is to protect the public); Mitchem, 523 S.E.2d at 252 (holding that an employer may not discharge an employee for refusing to engage in a clearly unlawful act). In these two cases, the state court clarified that only the violation of two types of statutes may give rise to a viable wrongful discharge claim: (1) a statute "stating explicitly that it expresses a public policy of the Commonwealth[;]" and (2) a statute that implicitly expresses an established state public policy which is "designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general" that the discharge violates. Anderson, 92 F. Supp. 2d at 521-22 (citing, Harris, 523 S.E.2d at 245; Lockhart, 439 S.E.2d at 331; Bowman, 331 S.E.2d at 801); see Mitchem, 523 S.E.2d at 251-52. Additionally, the state court narrowed Bowman further by holding in Harris and Mitchem that even if a statute falls into

6

one of these two categories, an employee must also be "a member of the class of individuals [whom] the public policy is intended to benefit" and whom the statute protects. Id. at 522 (citing, Harris, 523 S.E.2d 239 at 246; Mitchem, 523 S.E.2d at 252).

Similarly, in Rowan v. Tractor Supply Co., the Supreme Court of Virginia identified only three circumstances where it has recognized a Bowman claim: (1) when "an employer violated a policy enabling the exercise of an employee's statutorily created right[,]" (2) "when the public policy violated by the employer was explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy[;]" and, (3) when "the discharge was based on the employee's refusal to engage in a criminal act." 559 S.E.2d 709, 711 (Va. 2002) (internal citations omitted). In Rowan, the state court answered in the negative a question of law certified to it by the United States District Court for the Western District of Virginia. The question was whether the employee-plaintiff, Rowan, stated a Bowman claim for wrongful discharge based on her employer's violation of the Virginia statute prohibiting obstruction of justice, Va. Code Ann. 18.2-460, where she refused to heed her employer's demand that she drop criminal charges of assault and battery against a co-worker. Id. The state court found that Rowan did not state a Bowman claim under those circumstances because that state statute provided no statutory right to a person involved in a criminal prosecution, and thus no corresponding public policy existed to protect a right under that statute. Id. Therefore, the state court answered that by discharging Rowan, her employer did not violate a right granted to Rowan, but rather violated a criminal statute enacted to ensure that the administration of justice is not subverted. Id. at 712. Based on the state court's answer, the district court granted defendant's motion for judgment on the pleadings; and on appeal the Fourth

7

Circuit affirmed the district court's decision. Rowan v. Tractor Supply Co., Civil Action No. 7:00-cv-00467 (W.D. Va. Apr. 19, 2002), aff'd, Case No. 02-1523 (4th Cir. Sept. 2, 2004).

Therefore, based on the relevant law, in order for Lucker to state a viable Bowman claim in the case before this court he must show either that Cole Vision violated a statutorily created right by firing him, or that he had a statutorily imposed duty which he was fired for refusing to violate. Storey, 207 F. Supp. 2d at 451 (citing, Anderson, 92 F. Supp. 2d at 520-21). Additionally, Lucker must show either that he was clearly within the public group directly entitled to statutory protection, SEVAMP, 362 S.E.2d at 919, or that Cole Vision fired him in retaliation because he refused to engage in a criminal act, Storey, 207 F. Supp. 2d at 451 (citing, Rowan, 559 S.E.2d at 710-11). See also, Leverton v. AlliedSignal, Inc., 991 F. Supp. 486, 493 (E.D. Va. 1998) ("in each instance where the Supreme Court of Virginia has permitted a Bowman claim, it has found that the discharged employee fell within the protective reach of the statute which supplied the public policy component of his or her claim"). The statutes Lucker cites with reference to the facts of this case do not provide a public policy basis to support a wrongful discharge claim under either analysis.

## IV.

Lucker claims that he was wrongfully terminated in violation of the public policy underlying Virginia Code § 59.1-200(A)(8),(14) of the Virginia Consumer Protection Act; and § 54.1-111(A)(8) of the General Provisions Relating to Regulatory Boards for Professions and Occupations. The Supreme Court of Virginia has not directly ruled on whether the provisions of the Virginia Consumer Protection Act (VCPA) reflect public policy to the extent necessary to support a wrongful discharge claim. Leverton, 991 F. Supp. at 491. Therefore, this court must

8

determine the rule which the Virginia Supreme Court would apply. See Kline, 464 F.2d at 187.
The VCPA, § 59.1-200(A)(8) and (14), provides:

> 8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised.
> ...
> 14. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]

VA. CODE ANN. § 59.1-200(A)(8),(14). Lucker claims that under these provisions of the VCPA, Cole Vision's advertising scheme was unlawful because it would not sell eyeglasses to customers at the advertised fifty-percent discount; but presented only an unnecessary package of eyeglasses, a two-year warranty, and a lens kit, and charged customers an additional thirty-five dollars for the warranty and lens kit absent itemization of the total price or an opportunity to refuse these extra charges. Lucker argues that had he succumbed to Cole Vision's orders that he only present the package items absent itemization or a choice of purchase, then he would have engaged in an unlawful act in violation of the VCPA Thus, Lucker draws the conclusion that he was fired in violation of the public policy codified in the VCPA

Next, Lucker states that the public policy underlying the General Provisions applies to the Virginia Board for Opticians, which may revoke or suspend his license for violating its regulations. Section § 54.1-111(A)(8) of the General Provisions Relating to Regulatory Boards for Professions and Occupations provides:

> A. It shall be unlawful for any person, partnership, corporation or other entity to engage in any of the following acts:
> ...

9

> 8. Violating any statute or regulation governing the practice of any profession or occupation regulated pursuant to the title.

VA. CODE ANN. § 54.1-111(A)(8). Lucker argues that had he endorsed Cole Vision's false advertising scheme by presenting the lens package to customers as ordered by Banez, or by allowing his staff to present the lens package to customers, then he would have been in violation of Virginia law. Thus, Lucker argues that he would have thereby risked prosecution, and revocation or suspension of his license by the Board for engaging in a criminal act.

Lucker claims that these facts applied to the VCPA and the General Provisions show that his termination falls under the limited <u>Bowman</u> exception to Virginia's employment-at-will doctrine. However, Lucker's arguments attempt to stretch the law. Lucker is incorrect that either of these two statutes provides an action for wrongful termination because neither provides him with a statutory right that gives rise to the narrow public policy exception under <u>Bowman</u>.

### A.

First, the facts plead by Lucker are most similar to those in <u>Leverton v. AlliedSignal, Inc.</u>, 991 F. Supp. 486 (E.D. Va. Jan. 13, 1998). In <u>Leverton</u>, the plaintiff claimed that he was fired in violation of the public policy underlying the VCPA. Leverton worked at AlliedSignal for thirty years prior to being discharged. AlliedSignal produced fibers used in the manufacture of automobile tires. Leverton was the manager of business development of the Industrial Fibers Business Unit at AlliedSignal when he expressed concern about an increased level of a chemical that weakens the breaking strength of the fiber and the company's alleged refusal to disclose this to its customers for fear it would hinder sales. Leverton included this information in a company report and was subsequently fired. Leverton alleged that AlliedSignal was required to comply

with all laws governing truthful and accurate representation of its products, and that the public policy of Virginia concerning proper practices in the sale and market of products formed the underlying basis for the VCPA.

Because the Supreme Court of Virginia has not specifically ruled on whether the VCPA is the type of policy-enunciating statute sufficient to support a Bowman claim, the Leverton court relied on the holding in SEVAMP for guidance. Id. at 492 ("SEVAMP [ ] offers a federal court [ ] a measure of guidance respecting how to discern the source of the public policy predicate for a viable Bowman claim."). In SEVAMP, the Supreme Court of Virginia explained the public policy predicate of a Bowman claim as a violation of "policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general [ ] [, as opposed to] those discharges of at-will employees which violate only private rights or interests." Id. (quoting, SEVAMP, 362 S.E.2d at 918) (internal citations omitted). The district court in Leverton found this language to be instructive, thereby requiring it to analyze the text of the VCPA to determine whether the statute protects any of these named interests. Upon analyzing the VCPA against this rubric, the district court found that the statute generally protected the public at large, but it neither expressly nor implicitly enunciated any public policy that was adequate for a Bowman claim because it did not protect any category of interests defined as policy predicates in Bowman and SEVAMP. Id. at 493 (stating most statutes which regulate economic activity generally protect public welfare interests, but if these types of statutes were to provide the policy predicate for a Bowman claim then the narrow exception would become so expansive that it would be obliterated). The district court reasoned that the legislative purpose of the VCPA was clear— "to promote fair and ethical standards of dealings between suppliers and

11

the consuming public." Id. (internal quotations omitted). Additionally, the district court found that even if it had construed the VCPA to implicate policy interests necessary for a Bowman claim, Leverton's claim would fail because he was not within the protective reach of the statute given that he was neither a supplier nor a consumer. Id. The district court therefore held that the Supreme Court of Virginia would find Leverton's claim outside the narrow exception articulated in Bowman and granted AlliedSignal's Rule 12(b)(6) motion to dismiss.

Like the situation in Leverton, in the case before this court Lucker alleges that Cole Vision wrongfully terminated him in violation of the public policy expressed in the VCPA. Specifically, Lucker states that under the statute, Cole Vision, as a supplier, has a duty to its customers, the consuming public, to sell its products as advertised. Therefore, because Cole Vision did not sell or intend to sell a pair of eyeglasses to its customers at a fifty-percent discount as advertised, but instead added an additional thirty-five dollars to the total price for an unnecessary lens care package without disclosing this to the public, Cole Vision acted unlawfully and violated the provisions of the VCPA that prohibit false advertising and misrepresentation in connection with a transaction. See VA. CODE ANN. § 59.1-200(A)(8),(14). Lucker claims that Cole Vision wrongfully discharged him because he refused to engage in a criminal act when he refused to sell the eyeglasses and lens care package in a fraudulent manner as Cole Vision instructed. Instead of following Cole Vision's instructions, Lucker insisted upon disclosing and itemizing sale items, giving customers a choice whether to purchase the package, and instructing his staff to do the same. Lucker claims that § 59.1-200(A)(8),(14) of the VCPA enunciates and protects public policy interests that trigger the narrow exception recognized in Bowman and SEVAMP—"property rights, personal freedoms, health, safety, or welfare of the people in

general." Leverton, 991 F. Supp. at 492 (quoting, SEVAMP, 362 S.E.2d at 918) (internal citations omitted). However, despite Lucker's good Samaritan efforts, this court finds that the VCPA does not implicate any public policy interests that would trigger a Bowman claim. See id. at 493.

To determine whether the VCPA is protective of those predicate public policy interests which are necessary to support a Bowman claim, the starting point of analysis is the text of the VCPA. See id. at 492-93. Upon review of the language of the statute, "[t]here is no doubt that the [VCPA] does not expressly enunciate public policy" because it does not in express terms articulate a public policy. Id. Therefore, it is not the type of statute that was at issue in Lockhart. See Lockhart, 439 S.E.2d at 330-31 (finding cognizable Bowman claims where statute explicitly articulated public policy to be free from racial and gender discrimination). The next step of analysis is to determine whether a predicate policy is then implicit in the statute, such as it was in Bowman. See Bowman, 331 S.E.2d at 801 (finding narrow exception exists for retaliatory discharge where statute implicitly expresses established public policy designed to protect stockholders' property rights and personal freedoms to vote absent duress). The legislative intent of the VCPA is "to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. Additionally, the statute "affords consumers a claim by which to seek redress when a supplier exceeds the statutory boundaries." Id. at § 59.1-204. Thus, the VCPA generally protects the public at large from unfair and unethical transactions by suppliers. See Leverton, 991 F. Supp. at 493. However, a statute which generally protects some degree of an interest does not hurdle the strict policy prerequisite to trigger the exception to the employment-at-will doctrine as set forth by the Supreme Court of

13

Virginia in Bowman and SEVAMP . See id.; Harris, 523 S.E.2d at 245; Lockhart, 439 S.E.2d at 331. In Virginia, the jurisprudence on wrongful termination is clear that only those statutes which either explicitly express a public policy, or that implicitly express an established public policy "designed to protect property rights, personal freedoms, health, safety, or welfare of the people in general" that the discharge violates can trigger the narrow exception under Bowman. Anderson, 92 F. Supp. 2d at 520-21 (internal citations omitted). The VCPA does not protect any of the prerequisite interests necessary to support Lucker's wrongful termination claim. If statutes which generally protect the economic interests of consumers, such as the VCPA, were determined sufficient to trigger the exception, the exception would erode. E.g., Leverton, 991 F. Supp. at 493; Rowan, 559 S.E.2d at 711.

Moreover, Lucker had no statutory duty under the VCPA because he was not a supplier. See e.g., Leverton, 991 F. Supp. at 493; Anderson, 92 F. Supp. 2d at 521. Furthermore, even were the court to construe the VCPA as implicating a public policy which would trigger the exception, Lucker is not within the protective reach of the statute because he was an employee and not a consumer. See e.g., Anderson, 92 F. Supp. 2d at 521 (internal citations omitted); Rowan, 559 S.E.2d at 711. Therefore, the court finds that there is no underlying public policy interest in the VCPA violated by Lucker's discharge. Thus, Cole Vision violated only Lucker's private rights and interests, if any, by firing him. See SEVAMP, 362 S.E.2d at 918 ("The exception we recognized was not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests.").

**B.**

Second, Lucker leaps from the VCPA to the General Provisions statute governing

14

regulatory boards of professions and occupations, VA. CODE ANN. § 54.1-111(A)(8), to claim that as an optician he would have been subject to revocation or suspension of his license and criminal prosecution for false advertising had he followed Cole Vision's instructions and failed to disclose to customers the price of each item in the lens package. Section § 54.1-111(A)(8) of the General Provisions makes it unlawful for an optician to violate any statute or regulation governing the practice of optometry. Id. Lucker attempts to base this portion of his claim on the assertion that because he is an optician governed by the Board for Opticians, and because the Board for Opticians is regulated by this statute, he would have been committing an unlawful act had he failed to give Cole Vision's customers an option whether to purchase the unnecessary lens care package and failed to disclose the price of each item, and as a result the Board could have then revoked or suspended his license. On these facts, Lucker claims that Cole Vision fired him for refusing to engage in a criminal act. However, Lucker fails to cite a specific provision of the statute or board regulations concerning false advertising by opticians to support his claim.

Lucker has misapplied and confused the law. Upon review of the law, only one regulation exists concerning false advertising for which the Board for Opticians may revoke or suspend an optician's license. This regulation is in the Virginia Administrative Code, and it provides that "[p]ublishing or causing to be published any advertisement related to opticianry that is false, deceptive, or misleading" are grounds for the board to revoke or suspend a license. 18 VAC 100-20-110(A)(5). Lucker states in his Motion for Judgment that he first learned of the advertisement after Cole Vision had published it. Lucker does not allege that he had any part in creating the false advertisement before it was published, or that Cole Vision ever sought his participation or input. Lucker could not have violated this regulation because he did not publish

or cause the false advertisement to be published; Cole Vision published the advertisement without any input from Lucker. See generally, Mitchem, 523 S.E.2d 246; Swain v. Adventa Hospice, Inc., 2003 U.S. Dist. LEXIS 22753, *7-8 (W.D. Va. 2003) (dismissing wrongful termination claim where plaintiff failed to allege that she refused an unlawful order to perform an illegal act). In fact, Lucker states that he had no knowledge of the advertisement until after it was published. Under the facts Lucker alleges, he did not violate or refuse to violate this regulation, nor did Cole Vision instruct him to do so. Therefore, nor did Lucker commit an unlawful act or refuse an unlawful order in violation of the General Provisions, VA. CODE ANN. § 54.1-111(A)(8), for which Cole Vision could have terminated him for refusing to violate. Furthermore, to the extent that Lucker attempts to claim that he had a statutorily imposed duty under the regulations not to engage in false advertising, it is clear from the facts he alleges in reference to the law he cites that Cole Vision could not have terminated him for refusing to publish any false advertisement. Moreover, unlike the situation in Bowman where the defendant-employer threatened to fire plaintiff-employees/stockholders if they voted against a company merger, Cole Vision did not misuse the employee-at-will doctrine to subvert the exercise of any statutory right guaranteed to Lucker under the General Provisions. See SEVAMP, 362 S.E.2d at 918; Bowman, 331 S.E.2d at 801.

Consequently, the court's analysis need go no further. Lucker fails to show a necessary element of the public policy exception for refusing to perform an illegal act—that he was forced under threat of discharge to commit an unlawful act, or that he refused an unlawful order. See Rowan, 559 S.E.2d at 711; Swain, 2003 U.S. DIST. LEXIS at *7-8. Nevertheless, the court notes that the stated purpose of the General Provisions statute is to protect "the health, safety or welfare

16

Case 7:05-cv-00126-JCT Document 12 Filed 10/26/05 Page 16 of 17 Pageid#: 113

of the public [ ] [where] the potential for harm is recognizable and not remote or dependent upon tenuous argument." Va. Code Ann. § 54.1-100. Even were the court to construe the General Provisions to implicate the interests necessary for a Bowman claim on other grounds, Lucker is not within the protective reach of the statute because he is not within the public group of people the statute seeks to protect from unregulated professions or occupations. See id.; Rowan, 559 S.E.2d at 711; Anderson, 92 F. Supp. 2d at 521. Construing in Lucker's favor the facts and allegations as set forth in his complaint, the court concludes that the Supreme Court of Virginia would find that Lucker's claim does not meet the narrow exception to the employment-at-will doctrine. Therefore, the court finds that Lucker fails as a matter of law to show that Cole Vision wrongfully terminated him under the legal authority he cites to support his claim. See Fed. R. Civ. P. 12(b)(6).

## V.

For the foregoing reasons, the court grants Cole Vision's Rule 12(b)(6) Motion to Dismiss without prejudice.

**ENTER**: This 26th day of October, 2005.

SENIOR UNITED STATES DISTRICT JUDGE

17